IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARC YATES,

    Defendant.

Case Nos. 15-40063-01-DDC

**MEMORANDUM AND ORDER**

Before the court is pro se[1] defendant Marc Yates's Emergency Motion for Time Served Pursuant to the Provisions of the First Step Act of 2018 (Doc. 123). Mr. Yates contends that he is entitled to immediate release if the court directs the Bureau of Prisons ("BOP") to recalculate his good-time credits. Because Mr. Yates challenges the computation of his sentence, the court construes his Motion as one filed under 28 U.S.C. § 2241. The court dismisses Mr. Yates's Motion without prejudice for the reasons explained, below.

**I. Facts**

Mr. Yates pleaded guilty to one count of conspiracy to distribute more than five kilograms of a mixture and substance containing a detectable amount of cocaine. Doc. 103 at 1. The court sentenced Mr. Yates in December 2016 to a term of imprisonment of 76 months. *Id.* at

---

[1] Because plaintiff proceeds pro se, the court construes his filings liberally and holds them to "a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."); *see also Clark v. Oklahoma*, 468 F.3d 711, 713 n.1 (10th Cir. 2006). But the court does not become an advocate for the pro se party. *See Hall*, 935 F.2d at 1110. Likewise, plaintiff's pro se status does not excuse him from complying with the court's rules or facing the consequences of noncompliance. *See Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

2. After his prison term, Mr. Yates will be subject to a five-year term of supervised release. *Id.* at 3. Mr. Yates's projected release date from BOP is January 12, 2020.[2] *See* Inmate Locator, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (select "Find By Number" tab; enter "14029-031" into "Number" search box; and click "Search") (last visited April 12, 2019).

In his Emergency Motion, Mr. Yates contends—under the First Step Act of 2018—that BOP must recalculate his good-time credits, giving him 26 extra days credit. This recalculation, Mr. Yates contends, would change his release date to December 12, 2019.[3] Then, Mr. Yates asserts, that he is entitled to 12 months of home confinement. So, Mr. Yates concludes that he became eligible for home detention in December 2018.

## II. Discussion

### A. Mr. Yates has not filed his motion in the correct jurisdiction, nor has he exhausted administrative remedies.

Mr. Yates has styled his filing as an Emergency Motion. But, the court construes his filing as a petition for habeas corpus under 28 U.S.C. § 2241 because Mr. Yates seeks to challenge BOP's computation of his good-time credits. *Warren v. United States*, 707 F. App'x 509, 511 n.4 (10th Cir. 2017) ("If, for instance, a prisoner seeks to challenge certain 'matters that occur at prison, such as deprivation of good-time credits and other prison disciplinary matters . . . affecting the fact or duration of the [prisoner's] custody,' that claim must be raised in a § 2241 application rather than a § 2255 motion." (citation omitted)): *United States v. Parrett*, No. 01-CR-168-JPS, 2019 WL 1574815, at *2 (E.D. Wis. Apr. 11, 2019) ("[W]hen the good-time

---

[2] Mr. Yates represents he received credit for a 12-month reduction after he completed the Residential Drug Awareness Program.

[3] Mr. Yates inadvertently contends he would receive 29 days credit, although his calculation would result in 26 days credit and a release date of December 13, 2019. *See* Doc. 123 at 6.

provisions of the [First Step Act] do go into effect, the proper vehicle for [the prisoner] to use to request relief (after exhausting administrative remedies) would be a petition for habeas corpus under . . . § 2241."); *Rizzolo v. Puentes*, No. 1:19-CV-00290-SKO (HC), 2019 WL 1229772, at *2 (E.D. Cal. Mar. 15, 2019) (findings and recommendation) (reasoning that prisoner properly brought claims under § 2241 based on BOP's purported failure to calculate his sentence in light of the First Step Act and his contention he should receive more time in a halfway house or home confinement); *United States v. Scouten*, No. 13-CR-20S, 2019 WL 1596881, at *1 (W.D.N.Y. Apr. 15, 2019) ("[I]n challenging the Bureau of Prisons' execution of his sentence, [petitioner's] request for habeas relief is properly construed under 28 U.S.C. § 2241."). And, as a § 2241 petition, the court concludes that it must be dismissed because Mr. Yates did not file his petition in the correct jurisdiction nor did he exhaust his administrative remedies. The court explains these grounds for dismissal in the next two sections.

   1. **Jurisdiction**

Construing Mr. Yates's Motion as one made under § 2241, the court finds that he must file his motion in the judicial district where he is incarcerated against "the person who has custody" over him. *Parrett*, 2019 WL 1574815, at *2 ("As a general rule, jurisdiction [for a § 2241 petition] 'lies in only one district: the district of confinement.'" (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004))); *see also Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996) ("A [§ 2241 petition] . . . must be filed in the district where the prisoner is confined." (citation omitted)); *United States v. Powell*, No. 5:11-CR-75-JMH-1, 2019 WL 1521972, at *1 (E.D. Ky. Apr. 8, 2019) (holding court lacked jurisdiction because the inmate could "only seek such relief through a § 2241 habeas petition, and [could] only file such petition in the federal court located in the district in which he is incarcerated, or where a regional BOP office is

located"). Mr. Yates is incarcerated at the Federal Medical Center in Fort Worth, Texas. Doc. 123 at 1. The District of Kansas is not Mr. Yates's district of confinement, and, accordingly, the court dismisses Mr. Yates's Motion without prejudice.

   2. **Exhaustion**

Even if Mr. Yates had filed his Motion in the appropriate court, a federal prisoner generally must exhaust available administrative remedies before filing a 28 U.S.C. § 2241 habeas petition. *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *see also Rizzolo v. Puentes*, 2019 WL 1229772, at *2 ("[T]he exhaustion requirement is not a '"jurisdictional prerequisite,"' and thus 'is subject to waiver in § 2241 cases.'" (quoting *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012))). Accordingly, our Circuit has "occasionally waived exhaustion requirements where irreparable harm would otherwise result." *Steck v. Chester*, 393 F. App'x 558, 560 (10th Cir. 2010); *see also Staples v. Maye*, 711 F. App'x 866, 867 (10th Cir. 2017) (explaining that inmates also "need not exhaust their administrative remedies if they can show that exhaustion would have been futile.").

Mr. Yates contends that he suffers irreparable harm because his release date either is imminent or has passed. But, as discussed below, the court concludes that Mr. Yates's release date—even if BOP recalculated his good-time credits today—would be mid-December 2019. The court thus concludes that the irreparable harm exception is inapplicable.

Because Mr. Yates has not shown the requisite irreparable harm, he must comply with exhaustion requirements. Mr. Yates asserts that BOP staff has taken the position that it will not act without clear direction from the court. Doc. 123 at 2. But, Mr. Yates only has attempted to resolve his complaint informally. Mr. Yates's Motion does not allege that he has complied with

the multi-stage administrative process under 28 C.F.R. §§ 542.10–19. The court thus concludes, alternatively, that Mr. Yates's Motion should be dismissed for lack of exhaustion.

### B. The majority of courts have held that the First Step Act provision governing recalculation of good-time credits does not go into effect until July 2019.

The court has concluded that Mr. Yates's Motion presents a jurisdictional and prudential basis for dismissal without prejudice. With these reasons in mind, the court, out of caution, identifies yet a third alternate ground for denying his motion: Courts roundly have rejected Mr. Yates's position that he is entitled to immediate recalculation of his good-time credits because this provision of the First Step Act has not yet gone into effect.

Section 102(b)(1) of the First Step Act of 2018 amends 18 U.S.C. § 3624 and authorizes BOP to award 54 days of good-time credit per year, rather than the 47 days awarded by BOP previously. Pub. L. No. 115-391, 132 Stat. 5194. This decision, in effect, abrogates *Barber v. Thomas*, 560 U.S. 474 (2010), which upheld BOP's 47-day calculation method. *Barber*, 560 U.S. at 480; *see also Schmutzler v. Quintana*, No. 5:19-046-DCR, 2019 WL 727794, at *2 (E.D. Ky. Feb. 20, 2019). But, this change did not go into effect when the President signed the First Step Act into law on December 21, 2018. Instead, the change to credit calculation will take effect after the Attorney General completes the "risk and needs assessment system" mandated in § 101(a) of the Act. The Attorney General has 210 days from the First Step Act's effective date to do so. In short, the change to the good-time calculus will not take effect until the Attorney General complies the statutorily mandated assessment.

Courts have concluded that the plain language of § 102 of the First Step Act mandates the change to good-time credit calculations after the Attorney General releases the risk and needs assessment system mandated by the Act. *See Parrett*, 2019 WL 1574815, at *1; *Johnson v. Bureau of Prisons*, No. 4:19-CV-224-O, 2019 WL 1569360, at *2 (N.D. Tex. Apr. 11, 2019);

5

*United States v. Powell*, No. 5:11-CR-75-JMH-1, 2019 WL 1521972, at *3 (E.D. Ky. Apr. 8, 2019); *Roy v. U.S. Bureau of Prisons*, No. 2:19-CV-59-RMP, 2019 WL 1441622, at *1–2 (E.D. Wash. Apr. 1, 2019); *Sheppard v. Quintana*, No. 5:19-084-DCR, 2019 WL 1103391, at *2 (E.D. Ky. Mar. 8, 2019); *Oscar Molina v. Underwood*, No. 3:19-CV-641-K-BN, 2019 WL 1533444, at *2 (N.D. Tex. Mar. 19, 2019), *report and recommendation adopted*, No. 3:19-CV-641-K, 2019 WL 1531853 (N.D. Tex. Apr. 9, 2019); *Kornfeld v. Puentes*, No. 1:19-CV-00263-JLT (HC), 2019 WL 1004578, at *3 (E.D. Cal. Mar. 1, 2019) (findings and recommendation); *Schmutzler*, 2019 WL 727794, at *2.

Mr. Yates attaches to his motion a short order from the District of Oregon where that court directed BOP to recalculate a prisoner's good-time credits. In that case, Mark John Walker—a prisoner serving a 10-year sentence for violating 18 U.S.C. § 242—requested an order directing BOP to recalculate his good-time credits immediately. Mr. Walker argued that the First Step Act's revision of 18 U.S.C. § 3624(b) took immediate effect—and so, Mr. Walker should receive 70 additional days of good-time credits. According to Mr. Walker, the 210-day delay provision in § 102 did not apply to the provision governing recalculation of good-time credits, even though this provision also appears in § 102. Instead, Mr. Walker argued the 210-day delay only bore a rational connection to the risk and needs assessment system.

But, in granting Mr. Walker's Motion, the district court explicitly declined to evaluate the merits of Mr. Walker's argument because the government hadn't responded to it. *See* Order Requiring Recalculation of Good Time Credit at 1, *United States v. Walker*, No. 3:10-cr-00298-RRB-1 (Feb. 7, 2019), ECF No. 110 ("[G]iven the Government's failure to address the merits of Defendant's request, and the equities of the situation, the Court will GRANT the relief requested *for this case only, without a final determination of the merits of the legal issues raised by*

*Defendant*.") (emphasis added); *cf. Scouten*, 2019 WL 1596881, at *3 ("[Petitioner's] arguments to the contrary—that § 102 (b)(1)(A) is immediately effective—are each unpersuasive in light of the plain effective date provision in § 102 (b)(1)(B).").

The court views the decision in *Walker* as having limited persuasive value because of the government's failure to respond to the offender's argument. Instead, the court is persuaded by the reasoning of the majority of cases and their plain reading of the First Step Act. Because BOP lacks authority to recalculate Mr. Yates's good-time credits until the provision takes effect, Mr. Yates's challenge is premature. *See Roy*, 2019 WL 1441622, at *2. And, even if the court agreed with Mr. Yates that he is entitled to an immediate recalculation, the court finds his case different from *Walker* for reasons explained in the sections below.

**C.  Even if Mr. Yates received a recalculation of his good-time credits, the end of his term of confinement is not imminent, nor has it already passed, because Mr. Yates is not entitled to 12 months of home detention under the Act.**

One key difference between *Walker* and Mr. Yates's case is that Mr. Yates presupposes he is entitled to 12 months of home confinement under the First Step Act. In *Walker*, the petitioner argued that recalculating his good-time credits would result in his immediate release. But here, even if Mr. Yates received his extra good-time credits right now, his release date would arrive at the end of this year—December 12, 2019. Mr. Yates comes to a different conclusion, reasoning that—applying 12 months of home confinement—he became eligible for home confinement as of December 12, 2018. Mr. Yates's arguments are unavailing for several reasons.

First, Mr. Yates's Motion references the supervised release provision in the First Step Act instead of the home confinement provision. Mr. Yates attaches part of § 102 to support his claim that he is entitled to 12 months of home confinement:

7

> "(3) SUPERVISED RELEASE.—If the sentencing court included as part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

Doc. 123-2 at 4. Three problems arise. First, Mr. Yates cites to a provision of the Act governing supervised release, not home confinement. Second, even if this provision applied to him, it does not go into effect until July 2019. And, third, the provision explicitly vests BOP with discretion—*i.e.*, it "may transfer"—to determine which prisoners may begin their period of supervised release. The court thus finds this provision inapt to Mr. Yates's claim.

In contrast, Mr. Yates wholly omits § 602 of the First Step Act, titled "Home Confinement for Low-Risk Prisoners." Section 602 amended 18 U.S.C. § 3624(c) as follows:

> (2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. **The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.**

18 U.S.C. § 3624(c) (emphasis added). But it is BOP—not the courts—who decides whether home detention is appropriate. As § 3624(c) contemplates, "the authority . . . *may be used* . . . ." Rather than mandate any particular home confinement decision, Congress instead directed BOP to place prisoners on home confinement "to the extent practicable." *Id.*; *see also Carey v. Quintana*, No. 5:19-30-JMH, 2019 WL 1233846, at *2 (E.D. Ky. Mar. 15, 2019) ("'RRC placement and home confinement are helpful resources for readjustment to society, but a prisoner does not have a constitutionally protected right to serve the final twelve months of his sentence in either a RRC or in home confinement.'" (quoting *Heard v. Quintana*, 184 F. Supp.

8

3d 515, 520 (E.D. Ky. 2016))); *Xiao v. La Tuna Fed. Corr. Inst.*, No. EP-19-CV-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement."). Again, Mr. Yates presupposes that he is entitled to home confinement. But his conclusion is misplaced.

Last, even if BOP—in its discretion—granted Mr. Yates all six months of home confinement, Mr. Yates would not qualify for home confinement until June 2019. Section 3624(c) provides that BOP may place a prisoner in home confinement for the shorter of 10% of the term of imprisonment of that prisoner or six months. Here Mr. Yates would—at maximum—be entitled to six months of home confinement: He was sentenced to 76 months, and six months is less than 7.6 months (10% of Mr. Yates's term of imprisonment). And so, the court is unpersuaded that Mr. Yates's release is imminent or already has passed. In sum, the court finds Mr. Yates's attempt to compare himself to the petitioner in *Walker* unavailing.

## III. Conclusion

For the reasons explained above, Mr. Yates's Emergency Motion for Time Served Pursuant to the Provisions of the First Step Act of 2018 (Doc. 123) is dismissed without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Yates's Emergency Motion for Time Served Pursuant to the Provisions of the First Step Act of 2018 (Doc. 123) is dismissed without prejudice.

**IT IS SO ORDERED.**

**Dated this 23rd day of April, 2019, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**